UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ALLEN,

    Plaintiff,

v.

WAYNE COUNTY AIRPORT
AUTHORITY,

    Defendant.
_____/

Case No. 20-11000
Honorable Victoria A. Roberts

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 13]

**I.  INTRODUCTION**

Mark Allen, an African American employed for decades at the airport, brings this employment discrimination suit against his former employer, Wayne County Airport Authority ("WCAA"). Before the Court is WCAA's motion for summary judgment [ECF No. 13].

For the reasons below, the Court **GRANTS** WCAA's motion.

**II.  BACKGROUND**

WCAA is a government entity that operates the Detroit Metropolitan and Willow Run Airports in the metropolitan Detroit area. WCAA was established in March 2002 and began operating the airports in August 2002. Wayne County operated the airports before WCAA was established.

Allen began working for the airports in April 1994 as a Plant Helper – when the airports were still under the control of Wayne County. Wayne County promoted Allen to Airport Power Plant Assistant II on April 6, 1998. He remained in this position until June 15, 2009, when WCAA promoted him to Power Plant Superintendent/Operating Engineer Superintendent within the Power House.

Allen was one of five WCAA employees who held the position of Operating Engineer Superintendent; three whites and two African Americans. In September 2019, after reviewing its operational needs, WCAA decided that the classification of Operating Engineer Superintendent was no longer needed, and it made the business decision to eliminate the five Operating Engineer Superintendent positions and restructure the supervisory function at the Power House. As part of the restructuring, WCAA created a new "at-will" position of Lead Operating Engineer and offered those positions to two of the five formerly Operating Engineer Superintendents – one white and one African American. Allen was not one of them. Instead, WCAA offered Allen a severance, which he declined. Allen formally retired and began collecting retirement benefits. He continues to receive retirement benefits.

On December 19, 2019, Allen filed a charge with the EEOC; his sole claim was for retaliation. The EEOC issued a right to sue letter on January 23, 2020, stating that it was unable to determine whether the WCAA violated the law.

Allen filed this action on April 22, 2020.

WCAA moves for summary judgment. The motion is fully briefed.

### III.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could

find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The Court need only consider the cited materials, but it may consider other evidence in the record.  Fed. R. Civ. P. 56(c)(3).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

## IV.   ANALYSIS

Allen asserts three causes of action: (1) race/ethnicity discrimination in violation of 42 U.S.C. § 1981; (2) retaliation in violation of 42 U.S.C. § 1981; and (3) national origin discrimination in violation of Title VII.

### A.   Allen Cannot Establish a *Prima Facie* Case of Racial or Ethnic Discrimination under 42 U.S.C. § 1981

In Count I, Allen alleges WCAA: (1) "treated [him] differently, harassed him, and subjected him to a hostile environment on the basis of his race/African American ethnicity"; and (2) "was predisposed to discriminate against the Plaintiff on the basis of his race/African American ethnicity and acted in accordance with that predisposition."  Allen also

4

alleges that WCAA passed over him for a promotion in favor of his Caucasian colleague.

However, Allen testified that he was not passed over for a promotion but merely had a promotion delayed for several months. He also testified that he believed his separation was based on race and that the discipline he received was more severe than white employees based on racial discrimination.

WCAA says it is entitled to summary judgment on this claim because Allen cannot establish a *prima facie* case of race or ethnic discrimination under 42 U.S.C. § 1981. The Court agrees.

"A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Since Allen does not present direct evidence of discrimination, he must prove disparate treatment through the *McDonnell Douglas/Burdine* burden-shifting framework. *Id*.; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

This framework requires the plaintiff to establish a *prima facie* case of discrimination; to do this, a plaintiff must show: "1) he is a member of a

protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) . . . he . . . was treated less favorably than a similarly situated individual outside his protected class." *Johnson*, 215 F.3d at 572-73.

If the plaintiff satisfies this, "a mandatory presumption of discrimination is created and the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 573 (citation omitted). "If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.* A plaintiff can establish that the proffered reason was a mere pretext by showing that the stated reason: (1) had no basis in fact; (2) was not the actual reason; and (3) was insufficient to explain the defendant's action. *Id.* "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* (citation omitted).

      i.    **Allen Cannot Show His Separation Was Related to Race**

While Allen shows he is a member of a protected class and that he suffered an adverse employment action, he fails to show that he was qualified for the new position of Lead Operating Engineer or that he was

6

treated less favorably than a similarly situated employee not in a protected class. Moreover, even if Allen had established a *prima facie* case of discrimination, WCAA articulated a legitimate, nondiscriminatory reason for eliminating his position – i.e., restructuring and lowering costs by turning five Operating Engineer Superintendent positions into two Lead Operating Engineer positions – and Allen fails to show that WCAA's reason was pretextual. *See Johnson*, 215 F.3d at 572-73.

### ii. Allen Cannot Show His Delayed Promotion Was Based on Race

Allen says his promotion from Airport Power Plant Assistant II to Operating Engineer Superintendent was delayed based on his race. Allen says that before his promotion to Operating Engineer Superintendent, he spent a year and a half as the *temporary* Operating Engineer Superintendent even though the terms of his union contract specified that he should have been given the permanent position after six months in the temporary position.

WCAA says this claim fails because it is time barred and because Allen cannot show a *prima facie* case of racial discrimination based on his alleged delay in promotion.

WCAA is correct that this claim is time barred. WCAA promoted Allen in June 2009. Allen did not bring this action until April 2020 – over 10 years later – long after the statute of limitations had run.

Moreover, even if this claim was not time barred, it fails because Allen cannot establish a *prima facie* case. Specifically, Allen provides no evidence to show that the delayed promotion was an adverse employment action or that he was treated differently than any similarly situated employee not in a protected class. In fact, Allen testified that three other employees were held in the temporary position longer than six months at the same time that he was, and that when they were promoted to the permanent position, he was given first choice at shift preference. Allen also testified that he was "not sure" why he was held in the temporary position longer than six months.

### iii.  Allen Cannot Show He Received Harsher Discipline Based on Race

Allen claims that he received a five-day suspension without a hearing for insubordination. On the other hand, he says Mike Aquilina – a white employee with the title of Power Plant Engineer – received a verbal reprimand for insubordination.

WCAA argues – and the Court agrees – that it is entitled to summary judgment on this claim because Allen fails to show that he and Aquilina are

8

similarly situated "in all relevant respects." *See Perkins v. Harvey*, 368 Fed. Appx. 640, 644 (6th Cir. 2010). "To be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Although it is his burden, Allen fails to show that he and Aquilina – who held a different position – are similarly situated in these aspects.

### iv. Allen Cannot Show a Hostile Work Environment Based on Race

Allen alleges that he was harassed and subjected to a hostile work environment on the basis of his race. Allen does a poor job of articulating what conduct he relies on to assert his hostile work environment claim. However, in his complaint, Allen alleges that a coworker, Nyota Ellis – an African American – called him a "coward, stating he was not a man and in fact was a punk." Allen testified that Ellis also called him and Aquilina – who is white – "bitches" and other curse words in passing. Finally, in his response, Allen says John Philbrook, the Director of Power Systems for

9

WCAA criticized him; however, Allen says Philbrook did not make any race-based comments about him.

WCAA is entitled to summary judgment on Allen's hostile work environment claim.

To succeed on his racially hostile work environment claim, Allen must demonstrate that: "(1) []he belonged to a protected group, (2) []he was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011). Notably, a hostile work environment claim based on race is "cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's race." *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002) (abrogated on other grounds). To prove that harassment was based on race, a plaintiff must show either: "(1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed- race workplace." *Williams*, 643 F. 3d at 511.

Because Allen fails to demonstrate that his alleged harassment was based on race, his hostile work environment claim fails as a matter of law.

The Court GRANTS WCAA summary judgment on Allen's § 1981 racial discrimination claim.

### B. Allen Cannot Establish a *Prima Facie* Case of Retaliation under 42 U.S.C. § 1981

To establish a § 1981 retaliation claim, Allen must show that: (1) he engaged in protected activity; (2) the activity was known to WCAA; (3) he was subjected to a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action." *Herrera v. Churchill McGee, LLC*, 545 Fed. Appx. 499, 501 (6th Cir. 2013).

In his complaint, Allen alleges he engaged in protected activity when he "complained of and opposed unlawful discrimination and harassment." In his response, Allen says he engaged in protected activity when he submitted letters complaining of unjust treatment and discrimination of black employees.

While this certainly constitutes protected activity, WCAA argues that it is entitled to summary judgment because, among other things, Allen fails to submit evidence to support the element that "there was a causal connection between the protected activity and the adverse action." The Court agrees.

The complaints Allen relies upon about race are from 2000 to 2004. Allen submits no evidence showing how complaints from 15-20 years before he lost his job and before he filed this action caused him adverse employment actions.

Allen cites other letters he submitted in 2017 to 2019, but those involve complaints about operational and supervisory issues and do not constitute protected activity. None of the complaints after 2004 concerns race.

Although "the burden of establishing [a] prima facie case [of retaliation] on summary judgment is 'easily met,'" *Herrera*, 545 Fed. Appx. at 501, Allen's failure to submit any evidence to show a causal connection between his protected activity and his alleged adverse action is detrimental to his claim.

The Court GRANTS WCAA summary judgment on Allen's retaliation claim.

    **C.    Allen Failed to Exhaust Administrative Remedies with Respect to His Title VII Discrimination Claim**

In Count III, Allen alleges the WCAA: (1) "treated [him] differently, harassed him, and subjected him to a hostile work environment due to [his] race"; and (2) "discriminate[d] against [him] on the basis of his national origin and ethnicity."

12

WCAA says the Court should dismiss Allen's Title VII claim because he failed to exhaust his administrative remedies. The Court agrees.

An employee alleging employment discrimination in violation of Title VII must first file an administrative charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010); 42 U.S.C. § 2000e-5(f)(1).

Allen's EEOC charge was for retaliation; he did not check the boxes indicating that he was discriminated based on race, national origin, or color. Similarly, in the written description of his charge, Allen does not raise race, national origin, or ethnic discrimination. Allen does allege that he and two other Superintendents were discharged in September 2019. Notably, the two other Operating Engineer Superintendents who did not receive new positions were white.

Because Allen did not assert a hostile work environment claim or a disparate treatment claim based on race/national origin/ethnicity in his EEOC charge, the allegations in his complaint exceed the scope of his

13

EEOC charge. And although the Court must "liberally construe[]" the EEOC complaint "to encompass all claims 'reasonably expected to grow out of the charge of discrimination," *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (citation omitted), a claim of race discrimination would not be expected to grow out of a claim of retaliation where the claimant did not allege the existence of discrimination based on his race. Thus, Allen failed to exhaust his administrative remedies for his Title VII claim.

Moreover, even if Allen would have exhausted his administrative remedies for his Title VII claim, the claim would fail for the same reasons Allen's § 1981 racial discrimination claim fails; the *McDonnell Douglas/Burdine* framework applies to both claims. *See Mitchell*, 964 F.2d at 582.

The Court GRANTS WCAA summary judgment on Allen's Title VII claim.

## V. CONCLUSION

The Court **GRANTS** WCAA's motion for summary judgment. This case is dismissed.

**IT IS ORDERED**.

s/ Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: March 3, 2021

14